**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JESUS A. ALMANZAN,

     **Plaintiff,**

vs.              **CIVIL No. 02-1452 RLP**

JO ANNE B. BARNHART,
**Commissioner, Social Security,**

     **Defendant.**

**MEMORANDUM OPINION AND ORDER**

   This matter comes before the court on Plaintiff's Motion to Reverse Administrative Agency Decision and Remand for Rehearing. (Docket No.11).  For the reasons stated herein Plaintiff's Motion is granted, and the matter is remanded to the Commissioner of Social Security for Additional Proceedings.

**I.  Issues on Appeal**

   Plaintiff raises the following issues:

    A.  Whether the ALJ erred in finding that Plaintiff's mental and visual impairments were not "severe" at step two of the sequential evaluation process;

    B.  Whether the ALJ failed to follow the Treating Physician Rule.

    C.  Whether the ALJ erred in finding that Plaintiff could perform his past relevent work.

**II.  Standard of Review**.

   The Social Security Act provides that final decisions of the Commissioner shall be subject to judicial review. *42 U.S.C. §405(g)*.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." *Id.*  I review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether

correct legal standards were applied. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable man might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir. 1988). The determination of whether substantial evidence supports the Commissioner's decision is not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). I will not reweigh the evidence, but will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision in order to determine if the decision is supported by substantial evidence. *Glenn*, 21 F.3d at 984.

## III.    Background

Plaintiff is a non-English speaking auto mechanic[1] who completed the 7th grade in his native Mexico. He underwent surgery to repair a ruptured cerebral aneurysm on May 8, 1998. Postoperatively he  suffered from third[2] and sixth nerve palsies[3] (Tr. 132, 150-151, 153-155, 191,

---

[1]Plaintiff described his past work as heavy in exertional requirements.  (Tr.  82-83, 85).

[2]The third cranial nerve also called the ocular-motor nerve, "supplies all the extrinsic muscles of the eye, except the lateral rectus and superior oblique; it also supplies the levator palpebrae superioris and conveys presynaptic parasympathetic fibers to the ciliary ganglion for innervation of the ciliary muscle and sphincter pupillae." *Stedman's Medical Dictionary,* "oculomotor nerve [CN III]", (27th ed. 2000). Plaintiff's aneurysm repair was performed at University of New Mexico Hospital.  His treating physicians documented  third nerve palsy during his hospitalization in May 1998. (Tr. 131-132).  Cranial nerve palsies, including third nerve palsy, were detected at a June 18, 1998 exam. (Tr. 149).  Plaintiff's primary care physician, Dr. J. Leos Flores, noted third nerve palsy on August 18, 1998.  (Tr. 151).  Dr. Michael Polsky, a neurologist retained by the disability determination unit, examined Plaintiff on December 28, 1998.  He found no evidence of third nerve palsy.  (Tr. 153-155).   However two treating physicians documented third nerve palsy thereafter, Dr. Flores on February 24, 1999, April 9, 1999, September 3, 1999 (Tr. 294, 291-292, 290 ) and Dr. Javed Iqbal, a neurologist, on March 30, 2000 and April 4, 2000. (Tr. 221-223,225, 329, 224).

[3]The sixth cranial nerve, also called the adducent nerve, is a small motor nerve that supplies the lateral rectus muscle of the eye.  *Stedman's Medical Dictionary*, "adducent nerve," (27th ed. 2000).

222), double vision (Tr. 131, 149, 152, 143-155, 174, 221), poor movement of the right eye (Tr. 151-152, 299, 282, 286),  headaches (Tr. 152, 299, 154-155, 221, 224), ptosis (prolapse or drooping) of the right eyelid (Tr. 151, 221),  intermittent loss of balance or vertigo/dizziness (Tr. 299, 280-282, 224, 278, 319-320, 310), depression (Tr. 151) and insomnia.  (Tr. 154-155, 246).  Medications were prescribed to treat depression (Tr. 151, 246), anxiety (Tr. 300) and insomnia. (Tr. 92, 284).  He uses an eye patch to control double vision (152), which limits his depth perception and field of vision (Tr. 176-179), and precludes concentrated exposure to hazards such as heights and machinery.  (Tr. 176, 178-179; see also Tr. 101-103).  Benign paroxysmal positional vertigo ("BPPV" herein) was diagnosed by treating physician Terry H. McMillan, an otolaryngologist, in April 2000.  (Tr. 309-310).  Dr. McMillan performed an office procedure to treat this condition and placed Plaintiff on the "usual restrictions" for BPPV.[4]  One week later Plaintiff's vertigo had improved.  He was discharged and asked to return on an as needed basis.  Dr. McMillan also noted that Plaintiff's cranial nerve palsies had resolved.  (Tr. 310, 309).  Plaintiff continued to suffer from and be treated for severe headaches thereafter, which appeared to be triggered by exercises.  (Tr. 218, 316, 317).

## IV.    Discussion.

To qualify for disability benefits, a claimant must establish a severe physical or mental impairment that is expected to result in death or last for a continuous period of twelve months and which prevents the claimant of engaging in substantial gainful activity. 42 U.S.C. §432(d)(1)(A).  To determine disability, the Commissioner has established a five step sequential evaluation process.  *Id.*  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is or

---

[4]Dr. McMillian did not list the usual restrictions.  They appear to involve limiting bending over and extending the head.  *http:www.tchain.com/otoneurology/disorders/bppv.html.*

is not disabled.  *Id.*   At step two, the Commissioner, through her ALJ, determines whether the claimant has a severe impairment or combination of impairments.

The determination of whether a claimant's impairments are severe or not severe must be made with "great care."  *Social Security Ruling 85-28*.   While a claimant has the burden of proving his or her disability, that burden is *"de minimis"* at step two.  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

In this case, Plaintiff claim was not dismissed at step two.  The ALJ continued his evaluation through to step four, at which point he found that Plaintiff was able to perform his past relevant work as an auto mechanic.  (Tr. 22-23).   However, the ALJ specifically found that Plaintiff's only severe impairments were headaches following cerebral artery aneurysm.  (Tr. 19-20).  The ALJ addressed Plaintiff's diplopia, stating that it was corrected by use of an eye patch  (Tr. 20), but did not address the non-exertional restrictions resulting from use of an eye patch (lack of depth perception, restricted ability to be around machinery), relying instead on Plaintiff's single  comment to Dr. Polsky, who examined Plaintiff on one occasion only,  that he could work using one eye.  (Tr. 20, 153).  Neither the ALJ or the Appeals Council discussed Plaintiff's balance disorder which was  diagnosed in April 2000.[5]

I find that Plaintiff met his burden of showing that his balance disorder was a "severe" non-

---

[5]Plaintiff complained of dizziness as early as December 1998.  (Tr. 299).   Uncontroverted documentation of Plaintiff's balance disorder was submitted to the Appeals Council, which was required to consider such evidence if new and material, that is related to on or before the ALJ's decision.  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The Appeals Council did not discuss  this evidence.  This is error. *Cf*. *Franco v. Chater*, 98 F.3d 1379 (table), 1996 WL 559641, *2 (10th Cir. (Okla.)). (ALJ was required to discuss uncontroverted evidence and make specific findings capable of appellate review).

exertional impairment, and that the Commissioner failed to apply correct legal principles when she did not factor this impairment in at subsequent steps of the sequential evaluation process.

Further, I find that substantial evidence does not support the ALJ's determination that Plaintiff could return to his past work as an auto mechanic, nor did the ALJ apply correct legal standards at step four.

The requirements for making a determination at step four are stated in *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996):

> (Step four of the sequential evaluation process) . . . is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC) *see SSR 86-8 Soc. Sec. Rep. Serv., Rulings 1983-1991*, 423, 427 (West 1992), and in the second phase he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §1520(c). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitation found in phase one. *See SSR 82-62 Soc. Sec. Reps. Serv., Rulings 1975-1982*, 109; *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993). At each state of these phases, the ALJ must make specific findings. See *Henrie*, 13 F.3d at 361.

The ALJ found that if Plaintiff used an eye patch, he did not suffer from double vision. The ALJ did not discuss or make findings as to the vision requirements of an auto mechanic. Use of an eye patch reduces Plaintiff's vision, and precludes him from concentrated exposure to machinery. (Tr. 176, 178-179, see also Tr. 309-310). The ALJ did not discuss how this limitation impacted Plaintiff ability to work as a auto mechanic.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No. 11] is granted. This matter is remanded to the Commissioner of Social Security for Additional Proceedings commencing at step two of the sequential evaluation process. Plaintiff shall be permitted to submit additional evidence to the Commissioner. The Commissioner is instructed to fully

document his findings at all steps of the sequential evaluation process.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**